65  365
73  520

PEOPLES' BANK OF MERIDIAN

*v.*

ALABAMA GREAT SOUTHERN RAILROAD COMPANY.

PRIVILEGE LICENSE.   *Section 589, Code of 1880, considered.   Case in judgment.*

W. delivered certain cotton to a railroad company for shipment, and then transferred the bill of lading to a bank. The creditors of W. sued out an attachment, and caused the cotton to be seized thereunder. The railroad company having failed to ship the cotton, the bank brought an action for damages against the company to recover the value of the cotton. The latter pleaded that the bank at the time of the transfer |of the bill of lading was doing business without a sufficient privilege license, under "An Act in Relation to Public Revenue," in the Code of 1880, and was, therefore, precluded from maintaining its action by Section 589, in that act, which provides that "all contracts made with any person who shall violate this act, in reference to the business carried on in disregard of this law, shall be null and void so far only as such person may base any

claim upon them; and no suit shall be maintainable in favor of such person on any such contract." *Held*, that by the assignment of the bill of lading the bank acquired the title to the cotton; and the action being upon the contract made between W. and the defendant, and not upon the contract between itself and W., is maintainable (unaffected by the provision quoted), though the plaintiff derives title *through* a contract *on* which it could not have sued.

APPEAL from the Circuit Court of Lauderdale County.

HON. S. H. TERRAL, Judge.

On the 26th of January, 1881, Wilder & Co., cotton buyers, delivered at the town of Meridian in the county above mentioned, 20 bales of cotton to the Alabama Great Southern Railroad Company, to be transported to New York, under consignment to Copeland & Co., but subject to the order of Wilder & Co. Wilder & Co. transferred the bill of lading taken for the cotton to the People's Bank of Meridian. Before the cotton was shipped from Meridian, Wilder & Co. failed and the cotton was attached by their creditors and taken by the officers of the law from the custody of the railroad company.

The railroad company having thus surrendered the cotton and failed to ship it, the People's Bank, on the 9th of February, 1881, instituted this action on the bill of lading transferred by Wilder & Co. to recover damages for the breach of the contract sued on, or the value of the cotton.

Among other defences the defendant pleaded that at the time the bill of lading was transferred to plaintiff, it was doing business without having paid the privilege tax imposed upon it, and having obtained a proper privilege license, as prescribed by law, and is, therefore, disqualified to maintain any action upon the contract here sued on.

On the trial the court instructed the jury for the defendant as follows :

"8. While the law presumes, in the absence of evidence, that the People's Bank had a proper privilege license, yet if the evidence offered by the defendant satisfies the jury that said bank at the time of the indorsement of the bill of lading sued on, did not have a sufficient privilege license, then the law denies the right in the bank to maintain this suit, and the jury will find for the defendant."

There was a verdict and a judgment for the defendant. The plaintiff appealed.

*Walker & Hall*, for the appellant.

As to the defense attempted under the statute relating to privilege license, we hardly deem it necessary to comment.

The statute is highly penal—so much so, that upon the first application of it in the state, the legislature, with great unanimity, enacted a law giving all persons who had fallen under its ban an opportunity to relieve themselves of its severe penalties—it should be strictly construed.

*John W. Fewell*, for the appellee.

The defendant made a strong *prima facie* case of non-payment of sufficient privilege taxes, and the judgment of the court below ought to be affirmed.

COOPER, C. J., delivered the opinion of the Court.

The eighth instruction for the defendant should not have been given. Whether the bank had paid a proper privilege tax at the time it acquired the bill of lading is not material to its right to sue. The object of the suit is not to enforce a contract made by the bank in the course of its business; but is to recover property (or its value) acquired by it from a third person. If the contract between the bank and Wilder & Co. was an executory one, and the bank was suing that firm upon the contract, the suit might be defeated by proof of the fact that it had not paid the privilege tax required by law when the contract was made.

The statute, after fixing the sums to be paid by the persons exercising the privileges enumerated, and declaring punishment against the unlicensed party, proceeds : " And all contracts made with any person who shall violate this act, in reference to the business carried on in disregard of this law, shall be null and void so far only as such person may base any claim upon them ; and no suit shall be maintainable in favor of such person on any such contract."

The Act is of a highly penal character ; and while its terms should not be refined away upon familiar rules of construction, it should not be extended by implication or broadened by con-

struction. The evident purpose and extent is to impose a disability upon the delinquent to enforce executory contracts or to recover in any action on the contract itself. As was said in *Pollard* v. *Insurance Company*, 63 Miss., 244: " The statute does not deprive the owner of his property embarked in the business illegally carried on. The title is not in any manner affected. All the incidents of title remain, with the rights of owner, in all respects as to the property, except that no contract made in reference to the business not duly licensed can be enforced by him who has violated the law. The owner may resort to the courts and maintain any action to the maintenance of which title to the property entitles him, unaffected by the fact that the property is employed in business unlawfully carried on ; because the disability imposed by the statute extends only to rights founded on contracts made in reference to the business. The distinction is between title and its incidents and power to contract with reference to the subject of it. Not the title of the delinquent owner is impaired, but his capacity to make a contract he can enforce, whereby to make successful the business he is illegally conducting."

One conducting a business in violation of the statute acquires title to the goods he purchases in the markets of the world ; though he might be unable to enforce an executory contract for their purchase, or to sue upon a warranty of title or of quality. If he buys on credit, the seller may enforce payment of the purchase price ; for the contract is void only as to the violator of the law, and as to him only so far as he may base a claim upon them—*i. e.*, endeavor to maintain an action upon the contract. An anomalous condition of things would exist if a merchant transacting business without payment of the license required was disqualified to receive title to property bought and paid for in the usual course of trade. He certainly could not recover the price paid from the seller ; for, as to the seller, the contract is valid. But if he does not acquire title by a con summated sale, he would be unable to protect his possession from the unlawful interference of strangers having no sort of connection with the " contract " which the law condemns. Since, by the assignment of the bill of lading by Wilder & Co., the

bank acquired title to the cotton in controversy, and sues upon the contract made between the defendant and Wilder & Co., and not upon the contract between itself and Wilder & Co., it is entitled to maintain its suit, although it deduces title through a contract on which it could not have sued, if made by itself.

*Reversed and remanded.*